**Richmond.**

REID v̇. RHODES AND OTHERS.

March 14, 1907.

1. DEEDS—*Description of Land—Quantity Yields to Description.*—
Where the owner conveys to a purchaser one hundred acres of a
larger tract of land, giving descriptive boundaries, and after-
wards conveys to another purchaser for value the residue of the
tract, the latter having no notice of the rights of the first pur-
chaser other than that imparted by his recorded deed, the pur-
chaser of the residue of the tract takes all of the tract not em-
braced within the descriptive boundaries, though the boundary
described contains less than one hundred acres. Quantity, being
the least certain mode of describing land, must yield to descrip-
tion.

Appeal from a decree in chancery of the Circuit Court of
Rappahannock county. The answer of the defendant Rhodes
to a bill filed by one Settle was treated as a cross-bill, to which
the appellant was made a party defendant. From an adverse
decree the defendant Reid appeals.

*Reversed.*

The opinion states the case.

*R. E. Byrd,* for the appellant.

*Gordon & Gordon,* for the appellees.

CARDWELL, J., delivered the opinion of the Court.

The case presented on this appeal is as follows: Geo. W.
Settle and wife executed three certain deeds of trust on real
estate in Rappahannock county to secure to John Q. Rhodes

the payment of several loans of money, viz: September 30, 1891, $2,539; December 22, 1892, $1,000, and December 11, 1895, $1,900. The $2,539 debt secured by the first-named deed was in part a novation of a debt of $1,350 due from Settle to Rhodes secured by trust deed executed by Settle and wife on November 20, 1888, conveying by descriptive boundaries fifty acres of land, a portion of the "Old Jordan tract," which Settle had inherited from his deceased father, and upon the execution and recordation of the deed of September 30, 1891, securing the $2,539 debt, Rhodes was to release the trust deed of November 20, 1888; but this he had not done when this litigation began. The said deed of December 22, 1892, securing Rhodes the payment of the $1,000 debt, conveyed the home of Settle, known as "Locust Grove," "comprising twenty-six acres, more or less." By the deed of September 30, 1891, the property conveyed is described as follows: *"One hundred acres of land, being all that portion of the tract known as the original Jordan tract lying west and north of the house in which said first parties reside, and bounded on south by Mollie R. Reid, and east by a straight line running due north from said Mollie R. Reid's line with the orchard fence on said original Jordan tract to the end of said orchard, that embracing all the land north of said house and orchard."*

On the 15th of August, 1903, Settle and wife, by deed duly recorded, conveyed to Mollie R. Reid certain lands described as follows: "All the land embraced within the boundary of what is known as the 'Original Jordan' tract inherited by the said George W. Settle from his father, Thomas H. Settle, deceased, except that part of said tract embraced within the boundary of a certain deed of trust to James M. Dearing, trustee, to secure the payment of a certain debt due John Q. Rhodes, dated September 30, 1891, said boundaries being as follows." The deed then proceeds to set out precisely the boundaries of the land as contained in said deed to Dearing, trustee, of September 30,

1891; in fact, the boundaries are a verbatim quotation of the language of that deed.

Mrs. Reid borrowed the consideration, $3,000, to be paid to Settle for the lands conveyed to her, as stated, securing the payment of the loan by trust deed on this land, as well as upon an additional tract of land owned by her, and the $3,000 was to be applied to the liens upon the said land acquired by Mrs. Reid from Settle, estimated to amount to $3,000, including the lien of Rhodes for the $1,000, secured by the trust deed of December 22, 1892, which amount, with accrued interest thereon, was paid to him on July 1, 1904. At the time of said purchase by Mrs. Reid of Settle and wife, Dearing, as trustee, and at the request of Rhodes, had advertised for sale the land embraced in the deed of September 30, 1891, and in his advertisement had followed the exact terms of description given in the deed, which have been quoted in full above.

A controversy having arisen between Settle and Rhodes, Settle, on September 12, 1903, obtained an injunction against the sale advertised by Dearing, trustee, and at the second October rules taken in the clerk's office of Rappahannock Circuit Court, Rhodes filed his answer to the bill upon which the injunction was granted, his answer bringing forth for the first time, as contended by Settle, a suggestion of a controversy over the construction of the deed under which the sale by Dearing, trustee, was advertised, or as to the property embraced in it.

The contention made in the answer is, first, that the deed called for one hundred acres of land, and that a true construction of this deed would make the description override the lines fixed by the deed; and, second, that the true contract between the parties was that Rhodes should have one hundred acres, and that the deed should be reformed and the lines so run as to embrace one hundred acres.

Upon the filing of his answer the deposition of Rhodes was taken, and the contention in the deposition conforms to the averments in his answer.

At the following term of the court it was ordered that the answer of Rhodes be treated as a cross-bill, and process was directed to issue against Mrs. Reid to answer the same. She appeared and filed her demurrer in writing to the cross-bill, and after various proceedings were had, at the June term, 1904, the court sustained her demurrer and required Rhodes to amend his cross-bill by inserting "Respondent further alleges that one Mollie R. Reid, a sister of George W. Settle, is alleged to have purchased the residue of the said original Jordan tract not covered by the said boundaries in said deed of trust of September 30, 1891, and if so, respondent alleges that she took the said land subject to the right of respondent to have said deed reformed, and subject to his right to sell 100 acres of said tract to satisfy the debt thereby secured." Mrs. Reid thereupon filed her demurrer and answer to this amended cross-bill, the court overruled her demurrer, and the case proceeded upon the issues as contained in the pleadings.

The county surveyor, acting under the order of the court, upon a view of the premises, with the deeds before him, platted the lands as purchased by Mrs. Reid of Settle. Surveys were also made by the county surveyor of the land which Rhodes claimed he had a right to have sold to pay the debt secured by the deed of September 30, 1891, the first of which, controlled by the boundaries as set forth in the deed, shows the amount of land embraced therein is 55.5 acres. The second was made under the decree and instructions of the court, whereby 23-23.80 acres of land claimed by Mrs. Reid were added to the first survey, the whole amounting to approximately 79 acres, 21 acres short of the 100 acres which the court intended to be embraced in the survey made under its instructions. At the December term, 1904, an exception was taken to this second survey of 79 acres by Rhodes, and a decree made which, after holding that the deed of September 30, 1891, operated to convey the land embraced in the calls of said deed and all the land "north of the house and orchard," ordered another survey to be made

by the county surveyor in accordance with instructions given in the decree. Subsequently counsel for Rhodes, by letter, importuned the county surveyor not to proceed to make the survey ordered, because of the uncertain nature of the point of beginning as indicated by the court, to which the surveyor replied that it was impossible to comply with the directions of the decree because a line could not be drawn from point No. 6 in the former survey with the garden fence as then located to the point where the fence connects with the yard fence, which would not include the whole of the garden. Whereupon another survey was ordered, which was made as the county surveyor understood to be his instructions contained in the decree of the court and certain letters received by him, and by it 84 acres is included, or 16 acres less than the 100, but including the difference between 55.5 acres and 84 acres taken from Mrs. Reid's adjoining land. At the June term, 1905, this survey was approved, the injunction of Settle dissolved, a receiver appointed and the lands of Settle, including the 84 acres embraced in the last survey made in the cause, decreed to be sold; and from that decree Mrs. Reid obtained this appeal.

It is true that appellant is the sister of George W. Settle, but there is no proof whatever in the record to show that she did not act in the utmost good faith in buying the property of her brother, who was in financial straits, not only paying a fair price therefor, but going even to the extent of borrowing money with which to make the purchase, out of which appellee Rhodes was to be and was paid what was due him from Settle, secured on a part of the property she so purchased. Nor is there any evidence offered to prove that appellant had actual knowledge of any right in appellee Rhodes to have the said deed of September 30, 1891, reformed, so as to give him right to sell 100 acres of the "Original Jordan tract" to satisfy the debt thereby secured, regardless of the descriptive boundaries contained in the deed. Therefore, whatever notice appellant had of such a right in appellee is such constructive notice as that deed,

spread upon the record of the clerk's office of Rappahannock county, gave her. As between Settle and appellee Rhodes there was no controversy as to what land was embraced in the latter's deed, certainly until after appellant obtained her deed to "the residue of the original Jordan tract." Appellee was entirely familiar with the lands of Settle and with the boundaries given of the land embraced in his deed. Settle and appellee have both testified in the case as to what transpired between them culminating in the execution of the deed in question, and as to what land the deed was to embrace. Doubtless both testified in the utmost good faith as to what his understanding was touching the negotiations leading up to the deed, and as to what land the deed embraced. The former says that he was firmly of opinion that the land he proposed to convey and did convey as security for $2,539 loan made him by appellee, embraced in the boundaries given in the deed, was not less than 100 acres, but that it was never intended that the deed was to include any land not embraced in the descriptive boundaries given in the deed, for the reason, among others, that he had already encumbered the other portions of the "Old Jordan tract" with lien debts to amount almost, if not equal to, the value of the land, except as to 26 acres, upon which is the residence of Settle and other buildings; that appellee knew these facts, and had pointed out to him from a location where he could see the whole of the supposed 100 acres, and the boundaries thereof, to be given in his deed. Appellee, on the other hand, besides testifying as to negotiations between him and Settle, merely claims that his understanding of these negotiations was that he was to have his loan to Settle of $2,539 secured on 100 acres of the "Old Jordan tract"; and that if a true construction of the deed did not entitle him to subject 100 acres to the payment of his debt the deed should be reformed and the lines so run as to embrace 100 acres. He does not even allege that he misunderstood the lines of his deed.

In *Hunter* v. *Hume*, 88 Va. 24, 13 S. E. 305, it was held:

·"Particular boundaries govern general description of land; and a false description is rejected and the instrument takes effect if a sufficient description remains to ascertain its application."

"Quantity is regarded as the least certain mode of describing land, and hence must yield to description by boundaries and distances." See also Devlin on Deeds, sections 1038, 1039. *Flanary* v. *Kane,* 102 Va. 547, 46 S. E. 312, 681, and cases cited.

. It is difficult to see how any one connected in any way with the several interests involved in this suit would ever have contemplated that the deed in question conveyed more land than the boundaries given, upon their face, appeared to convey.

Not only was appellant without notice, actual or constructive, of the contentions made by appellee in this suit, but, on the contrary, she had strong reasons to know prior to her purchase of Settle that appellee had no idea that his deed in question would take him east of a north and south line with the house and orchard, first, because he had practically admitted this when he sought to secure a right of way from the land embraced in his deed to the Sam Settle land, upon which he also held a deed of trust, when, if the deed here in question, which had been in force for twelve years, enabled him to go west of this north and south line given therein far enough to embrace 100 acres within the call of his deed, the land over which he desired the right of way would have practically belonged to him; and, second, the advertisement that had been posted by Dearing, trustee, at the instance of appellee Rhodes, showed that no claim was laid to any land other than the land included in the boundaries of the deed.

In *Florance* v. *Morien,* 98 Va. 35, 34 S. E. 800, the opinion by Buchanan, J., says: "The recorded instrument is sufficient to give notice under the registry laws, if the property be so described and identified that a subsequent purchaser or encumbrancer would have the means of ascertaining with accuracy what and where it was, and the language used be such that if

he should examine the instrument itself he would obtain notice of all the rights which were intended to be created or conferred by it."

In this case the deed measures up to the requirements of the opinion just quoted, and upon an examination of it appellant could have reached no other conclusion, we think, than that appellee could lay no claim to any land not included in the descriptive boundaries given in the deed. All of these boundaries, as is conceded, are definite and certain except one, and that boundary is made definite and certain by the require- ments of the deed as to how the line was to run establishing it.

The construction of the deed adopted by the court below is not only contrary to any and every claim made in the plead- ings in the cause, but gave to the word "north" an interpreta- tion which overrode the other descriptive words "west and north" of the house. The construction was evidently founded on the words in the deed "embracing all the land north of said house and orchard," the word "north" being interpreted as em- bracing any land to the north of an east and west line, whether the same was directly north of the house and orchard or not. The land, as understood by the parties for twelve years or more, lies north and west of the house. By the first survey made by the county surveyor the line, and the only line as to which there is a dispute, as run by him, fulfills every description of the deed. It is true that it does not embrace 100 acres of land, but neither does the construction of the deed nor the survey ap- proved in the decree appealed from.

In our view of the case there is no ground whatever upon which the deed should be construed so as to make the call "one hundred acres of land" override the lines fixed by the deed, nor for reforming the deed and so running the lines as to em- brace 100 acres.

Whatever may be the rights of appellee Rhodes, as against Settle, which is a question not requiring our consideration, he fails to show that he is entitled to the relief he asks as against

appellant; therefore the decree complained of will be reversed and annulled, the cross-bill of appellee Rhodes dismissed as to appellant, and the case remanded to the Circuit Court for such further proceedings therein as may be deemed necessary or proper not in conflict with the views expressed in this opinion.

*Reversed.*