Wytheville.

STEELMAN 'V. LAFFERTY.

June 8, 1911.

1. EJECTMENT—*Verdict—Certainty—Description of Land—Oyster Land.*—Where the verdict in an action of ejectment is for a part only of the land sued for, the boundaries of the part recovered should be designated. The verdict must be certain in itself, or must refer to some certain standard by which to ascertain the land found, otherwise it will be too uncertain to render judgment thereon. If a riparian owner seeks to recover oyster planting ground as appurtenant to land owned by him, he must first establish his title to such land, and clearly locate its boundaries in order to determine the extent of the servient tenement.

2. EJECTMENT—*Evidence—Outstanding Legal Title.*—In an action of ejectment, a prior grant from the Commonwealth to another than the plaintiff is admissible in evidence as tending to show an outstanding legal title to the land in controversy.

Error to a judgment of the Circuit Court of Northampton county in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Otho F. Mears,* for the plaintiff in error.

*Gardiner R. Nottingham* and *Thomas B. Robertson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The defendant in error, Lafferty, brought this action of ejectment in the Circuit Court of Northampton county to

recover of the defendant, Steelman, seven parcels of land described in the declaration as "lying and being in the said county of Northampton and containing an area of seven and two-tenths acres, four and one-fourth acres, one and three-fourths acres, four-tenths acres, fifty-five one-hundredths acres, four and three-fourths acres, two and two-tenths acres, and ten and nine-tenths acres, all of said tracts being situated on the southern side of what is commonly known as Lafferty's or Godwin's Island, and bounded on the north, east, south and west by the lands of the said A. B. Lafferty."

The jury found the following verdict: "We the jury find for the plaintiff, that he recover from the defendant possession of the tracts of land described and specified in the declaration as being situate in the tributaries of Godwin's Island creek, containing two and two-tenths acres, fifty-five one-hundredths acres, four and one-fourth acres and one and three-tenths acres, and that he is entitled to said parcels of land in fee simple." Upon this verdict the court rendered judgment for the plaintiff.

The defendant's title to the parcels of land held by him is founded upon an assignment, under the oyster laws of the State, from the oyster inspector for District 23 A, in Northampton county. He has paid all rents, taxes and fees, as required by law, and planted a large quantity of oysters on the ground assigned to him. The plaintiff's title is based upon a tax deed from the clerk of the court, bearing date February 11, 1890, whereby, for the consideration of $2.50, he conveyed to the plaintiff real estate, standing in the name of Jesse Hutchinson and sold for delinquent taxes. The tax deed (after reciting that there was a report of the county surveyor "specifying the metes and bounds" of the real estate, "and the names of the owners of the adjoining tracts or lots, and giving further description of the land as will identify the same") grants to Laf-

ferty "that tract of land sold by the treasurer of North-
ampton county as aforesaid, described as Godwin's Island,
containing forty-three and three-fourths acres, and men-
tioned in the said report of the said county surveyor, as
surrounded by New Inlet, Wreck Island creek, Ship Shoals
Inlet and Godwin's Island creek, for a more particular
description of which reference is made to said report."

The report of the surveyor was lost and its contents not
proved. The land books of the county show that the only
land assessed to the plaintiff in Northampton county is 44
acres, valued at $50.00 and buildings at $100.00, and that
the total tax assessed thereon for the year 1908 was $2.42;
yet the land included in this tax-title deed forms the nucleus
for a claim by the plaintiff to a boundary of 1,400 or 1,500
acres (or, according to the estimate of one of the oyster
inspectors, to from 2,000 to 3,000 acres) of alleged tribu-
tary lands, to low water mark where the waters ebb bare.
But the evidence fails to locate and identify the forty-odd
acres of land acquired by the plaintiff at the tax sale; and
consequently it does not and cannot appear that the out-
lying oyster-planting ground assigned to the defendant is
in any wise appurtenant to the original tract. Indeed, the
consensus of the testimony of witnesses both for the plain-
tiff and defendant (including that of the county surveyor)
is, that the lands claimed by the plaintiff cannot be located.
Nor was it shown that the lands described in the declara-
tion as "situated on the southern side of what is commonly
known as Lafferty's or Godwin's Island" are bounded by
the lands of the plaintiff. That averment has for its sup-
port the opinion of the plaintiff, whose conclusion is drawn
from undisclosed facts. Obviously, the dominant estate
must first be clearly located in order to determine the
extent of the servient tenement.

Nor is the situation aided by the verdict, which finds four
out of the seven parcels of ground sued for, for a descrip-
tion of which the declaration is referred to.

In *Slocum* v. *Compton,* 93 Va. 374, 25 S. E. 3, the court held: "Where the verdict in an action of ejectment is for a part only of the land sued for, the boundaries of the part recovered should be designated.   The verdict must be certain in itself, or must refer to some certain standard by which to ascertain the land found, otherwise it will be too uncertain to warrant a judgment upon it."

The present case in this aspect is quite similar to the case of *Merritt* v. *Bunting,* 107 Va. 174, 57 S. E. 567, where Judge Cardwell, speaking for the court, says: "To sustain his contention that, as riparian owner, he also owned the whole of Little Assoteague bay, it was necessary for Bunting (plaintiff in the action of ejectment) to establish his ownership of the lands adjacent to the bay on all of the shore sides thereof. . . .   In other words, Bunting's claim is that he owned the whole of the bay by virtue of owning the high ground around the bay; that his title as owner of the ground around the bay extended to low-water mark; that the bay ebbed bare; and that he, therefore, owned the whole of the bay."   The court held that "the land conveyed was described as situated on Chincoteague Island, and embraced within courses and distances, but no starting point or ending point is given, and hence the location of the land could not have been ascertained, and the deed is inoperative as against a subsequent purchaser for value, even if he had notice of its existence."   *Mundy* v. *Vawter,* 3 Gratt. 518; *Florance* v. *Morien,* 98 Va. 35, 34 S. E. 890; *Reid* v. *Rhodes,* 106 Va. 701, 56 S. E. 722.

If, therefore, there were no other assignment of error, the failure of the plaintiff to establish his title to the parcels of oyster-planting ground in the possession of the defendant, as appurtenant to the forty-four acres acquired by him at the tax sale, would necessitate a reversal of the judgment. But we are of opinion that the court also erred in excluding from the evidence the grant from the Commonwealth to

Hutcheson, dated March 13, 1877. That grant conveyed to Hutcheson 855 57/100 acres of land situated in Northampton county, including Ship Shoal and Godwin's Islands, and was admissible evidence as tending to show an outstanding legal title to at least part of the appurtenant lands claimed by the plaintiff.

As the case must be remanded for a new trial along essentially different lines, we deem it unnecessary to notice objections to the ruling of the court with respect to instructions.

For these reasons the judgment must be reversed.

*Reversed.*