## Staunton.

ALLEN OSBORNE AND OTHERS v. PINKIE COX

September 17, 1925.

1. WILLS—*Construction — Intention    of    Testator—Surrounding Circumstances.*—The polar star to guide us in the construction of a will is the intention of the testator, which must be ascertained from the language used by him, viewed in the light of the circumstances surrounding him at the time the will was executed.

2. WILLS—*Construction—Effect to be Given to Words of Will.*—In the construction of wills it is a well settled rule that effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied.

3. WILLS—*Construction—Devise Not to be Enlarged Nor Extended by Construction.*—Though it may be possible that the testator intended to give more, yet if there be a subject found to satisfy the description, the court can neither enlarge nor extend it.

4. WILLS—*Deeds—Boundaries—Conflict Between Description of Property Conveyed and Quantity Calls.*—As a general rule, where land is conveyed by deed or devised by will, the quantity calls in the description of the property are controlled by known, visible and definite objects. When the language used gives a clear and unambiguous description of the land granted or devised, only where the other calls are erroneous or impossible are quantity calls allowed to prevail.

5. WILLS—*Description of Devise—Conflict Between Quantity Calls and Description of Subject of the Devise—Case at Bar.*—In the instant case, testator devised to his wife ''three hundred acres of land to be cut off of my farm on New river, on the east side of the branch that runs by the mansion house to the river, and to include the mansion house and all outbuildings.'' In the next clause of his will testator directed that the balance of his farm be kept intact and managed by his executors who were to pay the surplus proceeds to the legatees

named in the will. Testator supposed his farm to contain about 400 acres, but a survey of the farm showed that it contained only 308 acres, 133 acres on the east side of the branch named, and 175 acres on the west side of the branch.

*Held:* That under this devise the wife could take no land on the west side of the branch, as the branch was a definite, natural, and visible boundary line, well known to the testator. If, as contended, he intended to give his wife 300 acres of the farm, regardless of its location with reference to the branch, the language used not only fails to give expression to, but clearly negatives, such intention.

6. WILLS—*Construction—Language Used.*—The question is not what the testator intended to express, but what he did express by the language used.

Appeal from a decree of the Circuit Court of Grayson county construing a will.

*Reversed in part; affirmed in part.*

The opinion states the case.

*Jackson & Henson, R. L. Kirby* and *J. S. Bourne,* for the appellants.

*H. A. Cox, S. B. Campbell* and *J. M. Parsons,* for the appellee.

WEST, J., delivered the opinion of the court.

Isom Cox died at his home in Grayson county on the 21st day of January, 1923, testate, leaving surviving him his widow, Pinkie Cox, but no children. At the time of the execution of his will he owned considerable personal property and a tract of land lying on New river, known as the "Home Place," supposed to contain about 400 acres. Subsequent to its execution he conveyed to Mrs. J. I. Osborne 48½ acres of this farm. Prior to his death, but subsequent to the execu-

tion of his will, he purchased another farm in Grayson
county, on the north side of New river, containing
about 200 acres. By the codicil to his will he devised
to J. C. B. Osborne twenty-five acres and to Fielden
Ward seventeen acres of the farm on the south side
of the river.

After his death a survey of the farm mentioned
in the eighth clause of his will showed that it contained
only 308 acres, 133 acres on the east side and 175 acres
on the west side of the branch mentioned in that clause
of the will.

The only clauses of the will material to the matters
to be considered read as follows:

*Second Clause.*—"2. I bequeath unto my beloved
wife, Pinkie Cox, all of my household and kitchen
furniture and all live stock that I may own at my
death."

*Eighth Clause*—"8. I devise to my beloved wife,
Pinkie Cox, three hundred acres of land to be cut off
of my farm on New river, on the east side of the branch
that runs by the mansion house to the river and to
include the mansion house and all out buildings, the
garden, and to have and to hold the same for and dur-
ing the time of her natural life."

*Ninth Clause.*—"9. I desire that all the balance
of my farm shall be kept intact and that the same be
run and managed by my executors during the life of
my said wife, the said Pinkie Cox, and that the surplus
proceeds therefrom shall be paid to the legatees here-
inafter named."

Pinkie Cox, the widow, filed the bill in this case
praying that the court construe the testator's will and
especially the eighth clause thereof and direct the
executors and devisees to cut off to her 300 acres of
land on the eastern part of the farm on the south side

of New river so as to include the mansion house, out buildings and garden.

The case was heard upon the bill and exhibits, demurrer and answer of the defendants, and a decree was entered adjudging that by the eighth clause of the will the testator devised to his wife, Pinkie Cox, "all of the land on the east side of the branch that runs by the mansion house to the river for her life;" and, "it appearing that there are only 133 acres in this boundary, excluding the twenty-five acres devised to J. C. B. Osborne and a portion of the tract sold to Mrs. Jincy Osborne, and that these parcels of land were owned by the testator at the time of the making of his will and were considered by him in making the provisions for his wife, and that the acreage was approximately 48½ acres," it was further adjudged and decreed "that said Pinkie Cox do take a life estate in 48½ acres of land adjoining the 133 acre tract of land, to be laid off to her west of the branch running by the mansion house, the said branch to be the eastern line thereof, and New river the northern line thereof, and up and with said river to a point, that by running from said point in a southerly direction to the southern boundary line of the Isom Cox land, and from that point in an easterly direction to the head of said branch, so as to include 48½ acres of land." From this decree the defendants were allowed an appeal.

Both appellants and appellee complain of the construction placed upon clause eight of the testator's will; the former because it gave the appellee land on the west side of the branch, and the latter because it did not give appellee 300 acres of land.

[1] The polar star to guide us in the construction of a will is the intention of the testator, which must be ascertained from the language used by him, viewed in

the light of the circumstances surrounding him at the time the will was executed.

[2] "In the construction of wills it is a well settled rule that effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied." *Wootton* v. *Redd's Ex'or*, 12 Gratt. (53 Va.) 208; and cases cited.

[3] "And though it may be possible that the testator intended to give more, yet if there be a subject found to satisfy the description, the court can neither enlarge nor extend it." 12 Gratt (53 Va.) 209.

[4, 6] As a general rule, where land is conveyed by deed or devised by will, the quantity calls in the description of the property are controlled by known, visible and definite objects. When the language used gives a clear and unambiguous description of the land granted or devised, only where the other calls are erroneous or impossible are quantity calls allowed to prevail. *Reid* v. *Rhodes*, 106 Va. 701, 56 S. E. 722; *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681. It is certain that the testator did not know the number of acres of land in his home tract, on either side of the branch. And it seems equally clear that he did not intend to give his wife any land on the west side of the branch, nor his other devisees any land on the east side thereof. The eighth clause of the will provides, in terms, that the land devised to her shall be "cut off of my farm on the New river, on the *east side* of the *branch* that runs by the mansion house to the river." (Italics ours.)

The ninth clause provides that "all the balance of my farm shall be kept intact and that the same be run and managed by my executors * * * and that the surplus proceeds therefrom shall be paid to the legatees hereafter named."

The question is not what the testator intended to express, but what he did express by the language used.

Had he designated the land on the east side of the branch as White Acre and the land on the west side of the branch as Black Acre, the eighth clause of his will would have read as follows: "I devise to my beloved wife, Pinkie Cox, three hundred acres of land to be cut off of my farm on New river, from the part thereof known as White Acre." That language could not be construed to give the wife any portion of Black Acre; nor can the language actually used by the testator be construed to give the wife any land on the west side of the branch.

The branch is a definite, natural and visible boundary line well known to the testator, and he says the land devised to his wife shall be cut off on the *"east side of the branch."* If, as contended, he intended to give his wife 300 acres of the farm, regardless of its location with reference to the branch, the language used not only fails to give expression to, but clearly negatives, such intention.

We find nothing in the authorities relied on by the appellee to warrant us in so changing the language of the will as to enable us to construe it as giving the widow a life estate in land on the west side of the branch. To do so would be to make a new will for the testator.

In so far as the decree adjudges that the widow, Pinkie Cox, takes a life estate in 48½ acres of land

west of the branch running by the mansion house to the river, it will be reversed and set aside. In all other respects it will be affirmed.

*Reversed in part; affirmed in part.*