PRESENT: All the Justices

PHILLIP P. ETTINGER

v. Record No. 171542

OYSTER BAY II COMMUNITY
PROPERTY OWNERS' ASSOCIATION

OPINION BY
JUSTICE WILLIAM C. MIMS
October 18, 2018

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

In this appeal, we consider whether a property line runs to the center of a road when the deed describes the property as being bounded by that road and further includes the property's square footage as well as a reference to the subdivision plat.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

This case arises from a boundary dispute between Philip P. Ettinger and Oyster Bay II Community Property Owners' Association (the "Association") regarding Parcel E, a tract owned by Ettinger and located in the Oyster Bay II community in Accomack County. At issue is whether Ettinger owns the portion of Hibiscus Drive, a road forming the northeast boundary of Parcel E, between the road's edge and its center.

Titles to Parcel E and the properties in the Oyster Bay II community trace back to a common grantor, a developer known as First Chincoteague Corporation. In 1972, it recorded subdivision plats creating the lots and parcels of the Oyster Bay II community, including Parcel E. Three years later, it conveyed fee simple title to Parcel E to Woodrow D. Marriott.

The Association was created in 1976 through a settlement of federal litigation between lot owners and First Chincoteague Corporation. As part of that settlement, the corporation conveyed to the Association by a 1979 quitclaim deed "all of its right, title and interest in and to all streets, alleys and any and all other real estate situate in Oyster Bay II."

Ettinger acquired Parcel E by deed from Marriott's successors in interest in 2009. From its creation in 1972, every deed conveying Parcel E contained an identical property description:

> All that certain tract or parcel of land designated as Parcel "E" containing One Hundred Ninety-six Thousand Six Hundred Seventy square feet (196,670 sq. ft) as shown on a certain plat prepared by Richard H. Bartlett and Associates entitled "Oyster Bay Community, Section II, Subdivision 'D'" which plat has been duly recorded in the Clerk's Office for the Circuit Court of Accomack County, Virginia, in Deed Book 318 at page 494, along with a deed . . . to Joseph A. Giardina et als[.] duly recorded in said Clerk's Office in Deed Book 318 at page 483 et seq to which reference is made for a more accurate description of the herein conveyed tract or parcel of land. Said tract is *bounded on the Northeast, by Hibiscus Drive*; on the <u>Southeast</u>, by Lots 227 and 228 as shown on said plat entitled "Oyster Bay Community Section II, Subdivision 'B'" which is duly recorded in Deed Book 318, at page 490; on the <u>Southwest</u>, by lands now or formerly owned by Donald Amrien and Watson; and on the <u>Northwest</u>, by North Main Street.

(Emphasis added.) As Ettinger prepared to clear portions of Parcel E for development, the Association erected a construction fence and "no trespassing" sign along Hibiscus Drive preventing access to Parcel E.

Ettinger filed a complaint in the Circuit Court of Accomack County seeking, among other things, a declaration that under the rule in *Martin v. Garner*, 286 Va. 76, 80–81 (2013), Parcel E's boundary extends to the center line of Hibiscus Drive, and that in any event Parcel E enjoys a right of way from any adjacent portion of Hibiscus Drive. After Ettinger moved for summary judgment on the pleadings and stipulated record, the circuit court ruled that Parcel E had only a right of way over Hibiscus Drive. It rejected Ettinger's argument that Parcel E's boundary line ran to the center of Hibiscus Drive, relying on both the deed's reference to the subdivision plat and its description of Parcel E as comprising 196,670 square feet—a sum exclusive of any part

2

of Hibiscus Drive—to hold that Parcel E extends only to the edge of the road. We awarded Ettinger this appeal.

## II. ANALYSIS

Ettinger assigns error to the circuit court's holding that Parcel E does not run to the center of Hibiscus Drive. The challenged ruling arises from the circuit court's interpretation of his deed to Parcel E, which we review de novo. *Fairfax Cty. Redevelopment & Hous. Auth. v. Riekse*, 281 Va. 441, 444 (2011). In construing a deed, this Court looks to the "entire instrument" to ascertain the grantor's intent. *Providence Props., Inc. v. United Va. Bank*, 219 Va. 735, 744 (1979). Moreover, because the circuit court resolved this case on a motion for summary judgment, we "accept[] as true 'those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason.'" *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 136 (2001) (quoting *Dickerson v. Fatehi*, 253 Va. 324, 327 (1997)).

"It is an established rule in Virginia that a conveyance of land bounded by or along a way carries title to the center of the way, unless a contrary intent is shown." *Martin v. Garner*, 286 Va. 76, 80–81 (2013); *Cogito v. Dart*, 183 Va. 882, 889 (1945) ("[T]he boundary on a way, public or private, includes the soil to the center of the way if owned by the grantor and there are no words or specific descriptions to show a contrary intention."). Although the grantor may reserve the narrow strip to the center of the road from a conveyance, he or she must do so expressly—"[n]o such reservation will arise by implication." *Tidewater Area Charities, Inc. v. Harbour Gate Owners Ass'n*, 240 Va. 221, 228 (1990). "This doctrine has uniformly received the sanction of this court," *Durbin v. Roanoke Bldg. Co.*, 107 Va. 753, 756 (1908), since we first recognized it in the context of lands bounded by streams, *Hayes v. Bowman*, 22 Va. 417, 420

3

(1823) ("If it be the wish of the grantor not to convey the bed of the stream or of any part thereof, it is easy for him to exclude it, by the use of words, proper for that purpose. In the absence of such words, the moiety of the bed of the stream, passes by the conveyance."); *see also, e.g.*, *Schwalm v. Beardsley*, 106 Va. 407, 409–10 (1907) (applying *Hayes* and noting the general principle that "when the boundary line is simply an object . . . which has width, as in the case of a way, a river, a ditch, a wall, a fence, a tree, or a stake and stones, then the centre of the thing so running over or standing on the land is the boundary of the lot granted." (quoting *Boston v. Richardson*, 95 Mass. 146, 155 (1866))); 3 Emory Washburn & John Wurts, Washburn on Real Property § 2341, at 405 (6th ed. 1902) ("[I]t seems to be now a well-settled rule of law, that where land sold is bounded by a *highway*, or upon or along a highway, the thread or centre line of the same is presumed to be the limit and boundary of such land, in strict analogy with the case of a stream of water not navigable.").

As we observed in *Durbin*, the "presumption is based on grounds of public convenience, and to prevent disputes as to the precise boundaries of property." 107 Va. at 755; *see also* John E. Cribbet, Principles of the Law of Property 159 (1962) ("To prevent endless litigation over narrow strips and gores of land, the courts, in general, have followed the rule stated above."). The rule is based upon the equitable legal fiction that "when the road was originally formed, the proprietor on either side contributed a portion of his land for the purpose," *Durbin*, 107 Va. at 755–56, and is bolstered by "the lack of practical benefit to the grantor to justify a construction of intent to retain title to the strip of land," 1 American Law of Property § 12.112, at 428–29 (A. James Casner ed., 1952); *see Tidewater Area Charities, Inc.*, 240 Va. at 227–28. As a leading contemporary treatise observes, applying the opposite rule would have undesirable consequences:

4

> If the description were presumed to stop at the near edge of the road, it would leave a narrow strip of land (from the edge of the road to the midpoint) in the hands of the grantor. If, at some later date, the road were vacated, the original grantor would be able to return and claim the strip regardless of the interests or access needs of the grantee.

14 Richard R. Powell, Powell on Real Property § 81A.05[3][i][i], at 81A-108 (Michael Allan Wolf, ed. 2018). As evidenced by the rule's twin goals of limiting unnecessary litigation and protecting a grantee's right of access, the Association's decision to erect the fence is precisely the sort of act the rule is designed to prevent.

The deed's description of Parcel E as "bounded on the <u>Northeast</u>, by Hibiscus Drive" places this case within the rule's ambit. *See, e.g.*, *Martin*, 286 Va. at 81–82 (holding that a deed describing property boundaries as extending "to an alley, running north and south and leading into Prince Street, thence south forty four feet four inches" conveyed title to the center line of the alley); *Williams v. Miller*, 184 Va. 274, 278–79 (1945) (holding that a deed conveyed title to the center of a road where the deed described the land as being "bounded as follows: On the west by the old public road now closed"). Moreover, First Chincoteague Corporation originally owned all the land at issue. It created and conveyed Parcel E to Marriott years before executing a quitclaim deed conveying its remaining interest, if any, in the roads and other real estate in the Oyster Bay II community to the Association. Thus, absent a manifest expression of contrary intent in the Parcel E deed, application of the rule to this case is dispositive.

The Association contends that the deed's inclusion of Parcel E's square footage and reference to the subdivision plat provide the necessary contrary intent to prevent the rule's operation. We disagree.

This Court has consistently held that quantity designations are "regarded as the least certain mode of describing land, and hence must yield to description by boundaries and

5

distances." *Spainhour v. B. Aubrey Huffman & Assocs., Ltd.*, 237 Va. 340, 347 (1989) (quoting

*Reid v. Rhodes*, 106 Va. 701, 707 (1907)); *see also Osborne v. Cox*, 143 Va. 117, 121 (1925)

("When the language used gives a clear and unambiguous description of the land granted or

devised, only where the other calls are erroneous or impossible are quantity calls allowed to

prevail."); *Rose v. Agee*, 128 Va. 502, 509 (1920) ("It is familiar law that a designation of

acreage must yield to definite boundaries."). In light of these precedents, the deed's indication

that Parcel E comprises 196,670 square feet must yield to the definite boundary of Hibiscus

Drive.[1]

The Association next contends that the deed's reference to the recorded subdivision plat,

which depicts survey lines, indicates the grantor's intent to convey only to the road's edge. This

position, however, confuses the common practice of referring to survey plats to augment a deed's

property description with an express statement of contrary intent. When a deed describes a lot

---

[1] Other courts considering similar issues have also found quantity designations unpersuasive. *See, e.g.*, *Faulks v. Schrider*, 99 F.2d 370, 373 (D.C. Cir. 1938) ("[T]he specification of the area to the lot conveyed is not of itself sufficient evidence of the grantors' intention to reserve to themselves title to the beds of the abutting streets."); *Bowers v. Atchison, Topeka & Santa Fe Ry. Co.*, 237 P. 913, 915 (Kan. 1925) ("Where a survey gives the dimensions and quantity of the land conveyed exclusive of the public way, it does not operate to destroy the presumption that the fee to the roadbed was conveyed." (quoting *Van Winkle v. Van Winkle*, 77 N.E. 33, 35 (N.Y. 1906))); *Wiedmer v. W. Jersey & Seashore R.R. Co.*, 119 A. 776, 777 (N.J. 1923) (holding that property described as "abutting upon the exterior line of the avenue, and . . . limited in quantity to six thousand three hundred feet, strict measure, that being the precise quantity of land contained within the boundary lines specified in the deed" was insufficient to rebut the presumption of conveyance to the road's center line); *Parr v. Worley*, 599 P.2d 382, 384 (N.M. 1979) ("The area, as stated in the deed, is the only other fact, either from the deed or from the surrounding circumstances, which could arguably indicate that the reference to the highway was not intended by the parties as a monument indicating the boundary. This fact alone is not sufficient."); *Askins v. British-Am. Oil Producing Co.*, 203 P.2d 877, 880–81 (Okla. 1949) ("We are unwilling to hold that the mere statement of quantity in the deeds clearly and plainly disclosed that such was the intention of the parties, and in such case the doubt should be resolved against the grantor."); *Henry v. Borushko*, 281 P.3d 729, 733 (Wyo. 2012) ("The presumption that the reference to the canal meant the centerline of the canal is not rebutted by the inconsistent recitation of acreage.").

by reference to a survey plat depicting a street as a boundary, the rule applies and the deed conveys title to the center of that street. A mere reference to the plat does not constitute evidence of contrary intent. *E.g.*, *Durbin*, 107 Va. at 755; 1 Joyce Palomar, Patton and Palomar on Land Titles § 146, at 381 (3d ed. 2003) ("When the description is by a lot of a plat that shows the lot to be bounded by a highway, street, or alley, then the grant extends to the center of the public way, if the grantor owns that far, in the absence of a clear intention to the contrary."). Finally, to the extent the Association invites us to consider the subdivision plat in interpreting the Parcel E deed, the plat depicts a line running along the center of Hibiscus Drive. First Chincoteague Corporation's inclusion of the line in the subdivision plat when it first created Parcel E is consistent with this rule of construction. Accordingly, the deed's reference to the subdivision plat is insufficient to prevent application of the rule of construction.[2]

### III. CONCLUSION

Because nothing in the deed expresses a contrary intent, Parcel E extends to the center of Hibiscus Drive by operation of the rule of construction. Accordingly, we will reverse the circuit court's ruling that Parcel E extends only to the edge of Hibiscus Drive and enter final judgment for Ettinger.[3]

*Reversed and final judgment.*

---

[2] We have considered the Association's remaining arguments and find them unpersuasive.

[3] "The appellate court . . . shall render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice." Code § 8.01-681; *Kearns v. Hall*, 197 Va. 736, 744 (1956) ("Before entering final judgment, it should be reasonably apparent that the case has been fully developed in the trial court, or at least, that the parties had a fair opportunity of so developing the case, and we must be of opinion that, upon the facts before us, the parties have had a fair trial on the merits of the case, and that substantial justice has been reached."). Because all facts necessary for resolution of this appeal are contained within the stipulated record, entry of final judgment is appropriate.