**Richmond**

RAY WASKEY

V.

HENRY R. LEWIS, DAISEY L. POWELL AND RANDY GREEN

September 9, 1982.

Record No. 800887.

Present: All the Justices.

*James A. Butts, III,* for appellant.
*James T. Edmunds* for appellees.

RUSSELL, J., delivered the opinion of the Court.

In this case we must decide whether a recorded right of way, granted "without let or hindrance," may be restricted by gates erected by the owner of the servient tenement. Appellees Lewis, Powell and Green, owners and tenant of a dominant tenement, brought a chancery suit against appellant Waskey, owner of the servient tenement, seeking the removal of certain gates and gateposts which Waskey had erected upon a right of way which crossed his land. The trial court found the right of way to be six-

teen feet wide, enjoined Waskey from erecting any gates or obstructions thereon, and retained the case on the docket for the determination of damages. We affirm the decree.

In a partition deed dated September 17, 1919, Waskey's predecessor in title conveyed to the predecessor in title of appellees Lewis and Powell, three tracts aggregating 287.7 acres in Brunswick County. The conveyance included an appurtenant right of way over an existing road through the grantor's remaining land. The conveyance referred to a plat, but did not specify the width of the easement. The plat was present at trial and was referred to by counsel and the trial court. It was not, however, introduced in evidence and is not contained in the record. The deed provides:

> The said parties of the first and of the second and of the third parts do hereby mutually agree and covenant that that certain road which, as the same appears delineated on the said plat, extends through the said tract hereinabove conveyed by the said parties of the second and of the third parts to the to the (sic) said N.T. Lewis, and the said tract hereinabove conveyed by the said parties of the first and of the second parts to the said W.A. Lewis, to the said tract hereinabove conveyed by the parties of the first and of the third parts to the said Ashton S. Lewis shall be and remain perpetually a right of way, as at present located and defined, appurtenant to the three said parcels of land hereinabove mentioned containing 95.9 acres, each, and shall be perpetually accessible to, and available by, the present and future owners, occupiers, and tenants of all and singular the said premises without let or hindrance on the part of any person whomsoever: and the said parties do further mutually agree and undertake for themselves, their heirs, and assigns that this covenant and agreement shall be, and the same is hereby constituted, a covenant that shall run with all and singular the said lands: . . .

The owners of the dominant tenement have used this right of way continuously as a farm road and as access to State Route 644 since 1915. In 1973, Waskey became the owner of the servient tenement. In 1976, he erected an electric fence across the road to enclose his cattle. The electric fence carried approximately 800 volts and, according to the evidence, proved fatal to a mule which

strayed through it. Lewis drove through it with a tractor. His act resulted in proceedings against him in the general district court. Thereafter Waskey replaced the electric fence with a gate. In 1977 he placed three additional gates farther along the road where, he testified, he intended to erect cross-fences. No cross-fences had been erected, however, when the case came to trial over two years later. The gates then stood as isolated obstructions, crossing the road at three points beyond the entrance gate. All of the gates were operated by hand.

In October 1977, Waskey placed large padlocks on all the gates. He mailed keys to the appellees Lewis and Powell by registered mail, which they refused to accept at the Post Office. He later unlocked the three inner gates. The outer gate remained locked at the time of trial.

The gateposts are very substantial, consisting of eight deeply buried sections of creosoted "light line poles" spaced twelve feet apart. Appellee Green, a tenant of Lewis and Powell, testified that he had formerly used a combine fourteen feet wide, in connection with the grain crops, but that the gateposts were now too close together to permit its passage along the right of way.

Appellant contends that the case is controlled by Code § 33.1-202:

**Landowners may erect and maintain gates across private roads.** — Any person owning land over which another or others have a private road or right-of-way may, except when it is otherwise provided by contract, erect and maintain gates across such roads or right-of-way at all points at which fences extend to such roads on each side thereof; provided, however, that a court of competent jurisdiction may, upon petition, where it is alleged and proved by petitioner that the gates have been willfully and maliciously erected, may require that said landowner to make such changes therein as may be necessary and reasonable in the use of said roads for both the landowner and the petitioner.

Appellees respond that the words "without let or hindrance," contained in the grant of the right of way, constitute an exception "otherwise provided by contract," which removes this case from the operation of the statute. We agree.

Appellees argue that the phrase "without let or hindrance" prohibits any obstruction of free passage. The term "let," in conveyancing, has the same meaning as "hindrance." *Gustafson v. Ursales,* 3 Ohio App. 136, 139 (1914). Black's Law Dictionary 1048, (Rev. 4th Ed. 1968). The verb "hinder" is defined: "(vt) . . . to make slow or difficult the course or progress of: RETARD, HAMPER . . . hold back: prevent, check . . . (vi) to delay, impede, or prevent action: be a hindrance." Webster's Third New International Dictionary 1070 (1976). Thus the expression, while including the concept of a permanent obstruction, is also broad enough to include something far less. Unlike a cattle guard, a gate requires the traveller to stop, alight, open it, reenter his vehicle, move it past the gate, stop again, close the gate, and again reenter the vehicle.

"In the construction of language contained in a deed the grantor must generally be considered as having intended to convey all that the language he employed is capable of passing to the grantee, and where the description admits of two constructions, it will be construed most favorably to the grantee." *Hamlin* v. *Pandapas,* 197 Va. 659, 664, 90 S.E.2d 829, 833 (1956); *cf. Bunn* v. *Offutt,* 216 Va. 681, 685, 222 S.E.2d 522, 526 (1976). Applying these principles, we hold that the term "without let or hindrance," contained in the language granting a right of way appurtenant to lands conveyed, precludes the erection of manually-operated gates.

We now turn to the trial court's finding that the easement had a width of sixteen feet. Where no width is expressed in the instrument creating a new right of way, the determination of width is made by reference to the intention of the parties to the grant, as determined by the circumstances existing at the time and affecting the property. Annot., 28 A.L.R.2d 253 (1953). If the object of the right of way is expressed, then the dimensions of the way are such as to be "reasonably sufficient for the accomplishment of that object." *Hamlin,* 197 Va. at 664, 90 S.E.2d at 834. When, however, an instrument refers to and grants a right of way over an already existing road, the right of way is limited to the width of the road as it existed at the time of the grant. *Cushman Corporation* v. *Barnes,* 204 Va. 245, 252, 129 S.E.2d 633, 639 (1963); *Good* v. *Petticrew,* 165 Va. 526, 533, 183 S.E. 217, 219 (1936).

■ The right of way in question here passes over a farm road which existed across the land of the common grantor before the 1919 partition deed. The deed refers to it "as the same appears delineated on the said plat" and "as at present located and defined." Thus the width of the 1919 farm road determines the width of the present right of way. The record provides no answer to this inquiry. The plat attached to the deed, although present in court and referred to by counsel, was not introduced in evidence and is not before us. Only one page of the partition deed, that containing the grant of the easement quoted above, was offered in evidence. The oral testimony fails to provide an answer. While a farm road might then have been very narrow, it is also possible that it had been widened to accommodate fully loaded hay wagons drawn by teams.

■ Having heard the testimony of the several witnesses respecting the road's width, and having observed the plat referred to in the deed, the trial court determined the width of the way to be sixteen feet. Its finding in this regard is entitled to great weight and will not be disturbed on appeal unless it is unsupported by the evidence. The appellant has the responsibility of furnishing this Court with a sufficient record to enable us to determine his assertions that the trial court's decree is erroneous. He has failed to do so. "An appellant who seeks reversal of a decree on the ground that it is contrary to the law and the evidence has the primary responsibility of presenting to this Court, as a part of the printed record, the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error." *Lawrence* v. *Nelson,* 200 Va. 597, 598-99, 106 S.E.2d 618, 620 (1959). Rules 5:35, 5:37, and 5:39. We are unable to say, from the record before us, that the trial court's decree is plainly wrong or without evidence to support it and we cannot, therefore, disturb it. Code §8.01-680.

■ Appellant further argues that the trial court erred in retaining the case on its docket for a determination of the damages, if any, to which the appellees are entitled by reason of the erection of gates. There is no merit in this contention. Having determined that the gates constituted an injury entitled to equitable redress, the chancellor may properly determine what, if any, further remedy may be necessary to accomplish a just result in the light of the circumstances.

"[W]hen a court of equity acquires jurisdiction of a cause, for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights, and applying legal remedies to accomplish that end." *Buchanan* v. *Buchanan,* 174 Va. 255, 279, 6 S.E.2d 612, 622 (1940), *accord, Fidelity and Casualty* v. *Bank,* 213 Va. 531, 538, 193 S.E.2d 678, 684 (1973); *Iron City Bank* v. *Isaacsen,* 158 Va. 609, 625, 164 S.E. 520, 525 (1932); *Pack* v. *Whitaker,* 110 Va. 122, 124, 65 S.E. 496, 497 (1909); 42 Am. Jur. 2d, *Injunctions* §305 (1969).

We find no reversible error in the rulings of the trial court and will affirm the decree.

*Affirmed.*