## CIRCUIT COURT OF LOUDOUN COUNTY

Herman H. Anderson
and Beverly Anderson

v.

Sheffield Edwards
and Sarita B. Edwards

March 27, 1995

Case No. (Chancery) 15621

BY JUDGE THOMAS D. HORNE

This case arises from a dispute between owners of adjoining lots in a subdivision in Loudoun County concerning the existence of an alleged easement of way over a cul-de-sac on Defendants' land. Complainants Herman and Beverly Anderson, seeking declaratory and injunctive relief, brought suit against Defendants Sheffield Edwards, *pro se*, and his mother, Sarita B. Edwards, asking the Court to affirm their claim that they have, as an interest appurtenant to their land, the right to use the cul-de-sac in question, which is shown on the recorded subdivision plat, they contend, as a right of way meant to benefit their lot. Complainants further request that the Court enjoin Defendants from obstructing their use of that easement. Conversely, Defendants deny the existence of the easement, asserting that the cul-de-sac was intended by the subdivision developer, the common grantor from whom the parties derived their titles, to be for their exclusive use.

By previous order, entered December 5, 1994, the Court dismissed this action as it related to Defendant Sarita B. Edwards, who died while this cause was pending, and to her estate, which was no longer an interested party. Additionally, after hearing evidence from both parties and viewing the cul-de-sac in controversy, the Court granted to the Andersons a tem-

porary injunction enjoining Mr. Edwards from interfering with their lawful use of the cul-de-sac until a full hearing could be held.

The matter came to be heard at trial on February 1, 1995, at the conclusion of which the Court took the matter under advisement. The sole issue before the Court for resolution is what private rights, if any, Complainants have in the platted cul-de-sac located entirely on Defendant's adjacent lot and situated at the end of a road shared by the parties. Specifically, the Court must decide whether or not the common grantor, in subdividing and conveying the respective lots, intended to and did by valid means create an easement over Mr. Sheffield's property for the benefit of the Andersons' property.

The Court has neither been asked to nor does it elect to extend its analysis beyond the scope of the single aforesaid issue, particularly as it relates solely to the accrual of private, rather than public, rights. The subject matter of this litigation is apparently a private way. Like the road leading to it, the existing cul-de-sac was privately constructed and is privately maintained. Furthermore, the Court finds no evidence, either in the record or upon viewing the site itself, that indicates the cul-de-sac in question has been accepted by the county for public use. *See generally, Brown v. Tazewell County Water & Sewerage*, 226 Va. 125, 306 S.E.2d 889 (1983) (enunciating the criteria for a valid dedication of a road for public use). The Court, therefore, will focus its decision on the private rights of the instant parties relative to the way in dispute. Consequently, the parties to this suit and their successors in title are the only parties whose rights are affected by the decree herein. Neither the rights of the other property owners in the subdivision nor of the public are involved.

Upon review of the record and consideration of the testimony and arguments presented at trial, and for the reasons stated below, the Court grants Complainants' request for declaratory and injunctive relief as set forth with specificity hereinafter.

Many of the material facts are not in dispute. Indeed, most of them can be culled from the relevant deeds and plats associated with the respective lots of the parties. In 1958, Barbara and Robert Young purchased and subdivided a tract of land lying south of Leesburg and west of Route 15 at the confluence of Beaver Dam and Goose Creeks. The plat of the subdivision called "Goose Creek Farms" was duly recorded among the Loudoun County land records. The plat delineates approximately sixty-six lots in the subdivision, identifies those lots by number, and describes them by course, distance, and acreage measurements. The plat also shows certain

areas of the subdivision laid out as roads and rights of way. One such right of way, shown on the plat as 50 feet in width and running in a generally northwestern direction, abuts the eastern edge of Lot 54 and the western edge of the southeastern extension of Lot 55, and terminates as a cul-de-sac on Lot 55. The size of the cul-de-sac is not identified on the plat.

On April 25, 1959, the Youngs conveyed Lots 55 and 56 to Defendant's parents, Sheffield and Sarita B. Edwards. The deed of conveyance made no direct reference to the subdivision plat itself, but attached to and filed with the deed was a plat of Lots 55 and 56 and significant portions of bordering parcels, including Lot 54. With respect to Lot 55, the plat filed with the deed contains the same information and descriptions that are on the recorded plat, including a depiction of the common right of way that abuts Lots 54 and 55 and terminates as a cul-de-sac on Lot 55. Like the overall subdivision plat, however, the plat attached to the deed for Lots 55 and 56 does not show the size of the cul-de-sac. The deed describes the property conveyed as follows:

> [A]ll those lots or parcels of land situate, lying and being in Mercer Magisterial District, Loudoun County, Virginia, in the Subdivision known as Goose Creek Farms and designed as Lot No. 55 and Lot No. 56.

Immediately following the above description, the deed provides thus:

> Subject to aforesaid, the grantors will warrant generally the land hereby conveyed; they covenant that they have good right to convey the same to the aforesaid grantees; that the said land is free from all encumbrances.

On June 15, 1959, the Youngs conveyed Lot 54 to Robert and Jean Best by deed of conveyance containing the following language:

> [A]ll that lot or parcel of land situate, lying and being in Mercer Magisterial District, Loudoun County, Virginia, and more particularly described as Lot No. 54 in the Subdivision known as Goose Creek Farms.
>
> Subject to easements of record and rights of way per plat attached.

Attached to the deed was a plat of Lot 54 showing its relative position to adjoining lots and containing the same respective information that appears on the recorded plat. The 50-foot-wide right of way and its corresponding

cul-de-sac terminus, situated on Lot 55, are depicted on the map. Again, the size of the cul-de-sac is not designated.

In 1961, the Youngs filed a corrected plat of Goose Creek Farms that was based on a new, more accurate survey of the subdivision. The plat corrected slight inaccuracies in the areas and the dimensions of the subdivision lots that appeared on the original plat. In connection with the new survey, the Youngs executed deeds of correction with the Bests for Lot 54 and the Edwards for Lots 55 and 56, dated August 15, 1960, and September 10, 1960, respectively. Except for different lot numbers, both deeds of correction contained the same terms of conveyance, as follows:

> [A]ll of Lot No. 54 [or "Lot No. 55 + 56," respectively], Goose Creek Farms, in Mercer District, Loudoun County, Virginia, all in accordance with the plat attached hereto.
>
> Subject to aforesaid, the grantors warrant generally the land hereby conveyed; they covenant that they have good right to convey the same to the aforesaid grantees; that the said land is free from all encumbrances, except easements and trusts of record, if any, as of this date.

Attached to and filed with both deeds of correction were copies of the corrected subdivision plat. That corrected plat shows the same cul-de-sac on Lot 55 that appears on the original plat, although, unlike the first plat, the newer one includes a notation that indicates the subject cul-de-sac has a radius of 60 feet. At trial, an experienced title examiner examined a copy of the corrected plat and testified, without contradiction, that the symbolic depiction of the cul-de-sac on Lot 55 represents the terminus of a continuous shared right-of-way that abuts Lots 54 and 55. The cul-de-sac, he avouched, was intended by the subdivision developer to be an easement of right-of-way appurtenant to Lot 54 and thus for the use of both Lots 54 and 55.

In October, 1976, the Andersons purchased Lot 54 from the Towles who had acquired the parcel from the Bests in 1972. Both conveyances were by deeds that referred to the corrected plat and described the land conveyed as follows:

> All of Lot No. Fifty-four (54) in the subdivision known as Goose Creek Farms, as per [the corrected plat], subject to easements of record and rights of way as per plat [attached to the June 15, 1959, Youngs-to-Bests deed], comprising 10.64 acres.

In August, 1994, Sarita B. Edwards died. Pursuant to the terms of Mrs. Edwards' last will and testament, her son, Sheffield Edwards, took title to Lot 55. Mr. Edwards, as noted above, is now the sole defendant to this action. He presently operates a composting business in and around the area where the disputed cul-de-sac is located.

Having previously determined, based on evidence presented at pre-trial hearings and recapitulated at trial, that Mr. Edwards has, in the course of his business, obstructed or interfered with the Andersons' ordinary and customary usage of the cul-de-sac in question, particularly in that he has on occasion made ingress and egress impossible for their service contractors who require the cul-de-sac to turn their vehicles around and having by temporary injunction heretofore enjoined such obstruction and interference, the Court may now proceed to the issue at hand, namely the legal status of the subject cul-de-sac and the corresponding rights of the parties therein.

As previously noted, Complainants base their claim for declaratory relief upon the proposition that, pursuant to the terms of the deeds in their chain of title to Lot 54 and in accordance with the corrected plat of subdivision, they hold a right of passage over the subject cul-de-sac located on Defendants' property. Defendant counters with the argument that it was not the intent of the subdivision developer and common grantor of Lots 54 and 55 to create a private right-of-way easement for the owners of Lot 54 over the platted cul-de-sac on Lot 55. The cul-de-sac, as delineated on the corrected subdivision plat, was intended, he asserts, for the exclusive enjoyment of Lot 55. No other intention, he contends, can be read into the deeds for Lot 55 and the corrected plat. The gist of Defendants' argument in support of his claims revolves around two suggested applications of logic that may be summarized as follows: (1) Because the cul-de-sac in controversy is the only one of the seven cul-de-sacs in the subdivision that is situated entirely on one lot and (2) because the roadway leading directly to the cul-de-sac on Lot 55 is the only one of seven such roadways leading directly to cul-de-sacs in the subdivision that is not specifically designated as a right of way or named on the 1961 corrected plat, the cul-de-sac on Lot 55 must be intended exclusively for Lot 55's benefit. Defendant, however, cites no authority, nor could the Court discover any, to bolster this reasoning. Absent such authority, the Court finds Defendant's argument to be neither tenable nor persuasive. For one thing, Defendant's assertions fly in the face of the expert witness' uncontroverted testimony at trial that based on the layout and information contained on the corrected plat, in-

cluding those factors raised by Defendant, the cul-de-sac in question did constitute an easement appurtenant to Lot 54. For another, the Court's own sense of logic is not so easily swayed as to allow it to declare, based simply on factors that, in the Court's opinion, are irrelevant to the question at hand, that the platted cul-de-sac is Lot's 55 private driveway. The question before the Court is one of intent, specifically, the grantors' intent. Such intent must be ascertained by considering the entirety of the controlling deeds, not just discrepancies and peculiarities found on a plat which, as discussed below, has little bearing on the status of the instant cul-de-sac. The Court must, therefore, determine by which deeds and plats, if any, the easement was reserved and subsequently conveyed. It is from these documents that the intent of the common grantor can and must be construed.

Complainants and Defendant both rely predominantly on evidence extracted from the 1961 corrected plat of Goose Creek Farms, as the basis for their arguments about what rights of easement the subdivision developer and common grantor did or did not intend to convey to the respective purchasers of Lots 54 and 55. The Court is of the opinion, however, that the parties' reliance on the corrected plat is misplaced for three reasons. Firstly, although the corrected plat is the current subdivision plat of record and admittedly a more accurate demarcation of the subdivision than the original plat, it did not exist at the time that Lots 54 and 55 were created or originally acquired. The Youngs conveyed Lot 55 to the Edwards in April, 1959 and Lot 54 to the Bests in June, 1959. Any rights or burdens meant to run with those lots with respect to the subject cul-de-sac would have been conveyed at that time and in accordance with the plat then of record. The corrected plat was not incorporated into the chains of title for Lots 54 and 55 until 1960 when the respective deeds of correction were executed. As a general rule, a deed of correction relates back to the date of the deed corrected only with respect to those who were parties to the deed itself, as opposed to third parties that may have acquired rights to or in the subject matter of the original deed during the intervening period, as happened in this case. *See, e.g.*, 23 Am. Jur. 2d, *Deeds*, § 334. Secondly, the provisions of the 1960 deeds of correction themselves, as quoted above, indicate that the conveyances described therein were subject to any existing easements. Thirdly, those deeds in Complainants' chain of title that succeed the deed of correction conveyed Lot 54 subject to easements of record as described on the original subdivision plat. Accordingly, any rights of easement in the Lot 55 cul-de-sac acquired by virtue of the 1959

deeds would be unaffected by the deeds of correction and the corrected plat.[1] Therefore, the Court must turn to the 1959 Youngs-to-Edwards deed and the 1959 Youngs-to-Bests deed to determine whether or not the Youngs intended to and did in fact create a right of passage over the cul-de-sac to run with Lot 54.

The long-standing rule in Virginia is that when a deed conveys land without reservation, "the grantee takes all conveyed by the deed unencumbered, unless in some way notice is brought home to him that the land is sold subject to the encumbrances of some easement in another person." *Deacons v. Doyle*, 75 Va. 258 (1881). At first glance, the 1959 Youngs-to-Edwards deed appears to convey Lot 55 unencumbered. The deed's language, as quoted above, contains no mention of any easements and, in fact, expressly states that, subject to the description of the parcel of land by lot number in a named subdivision, the grantors covenant that the property is not encumbered. The fundamental rule of construction in Virginia, however, is that the intent of the grantor is paramount and must be determined by construing the deed under the circumstances and date of its execution. *Ellis v. Commissioner*, 206 Va. 194, 142 S.E.2d 521 (1965). Here, the circumstances, as evinced by the record, involved a typical purchase and conveyance of a subdivision lot. The grantors were the owners and developers of a tract of land that they had subdivided in accordance with a recorded plat that showed the subdivision lots laid out by number and depicted certain areas within the subdivision as rights of way. The grantees were purchasers of a particular lot in the subdivision. The deed by which that lot was conveyed gave no description of the parcel conveyed other than the name of the subdivision and the number of the particular lot being sold. Therefore, by itself, the description in the deed was meaningless. Attached to the deed, however, was a plat that delineated and described the dimensions of the parcel as well as rights of way near and on the lot. Also of record was the overall plat of the subdivision which, *inter alia*, showed the position of that lot in the subdivision and the configuration of the entire network of roads in the subdivision. The grantors clearly intended, then, in drafting a deed that gave no other description of the lot conveyed than its number, to make the attached plat and the overall subdivision plat which described that particular numbered lot a part of their

---

[1] Having said that, however, the Court acknowledges that, even if it were to assume, *arguendo*, that the deeds of correction and the corrected plat were controlling in the issue before the bench, the Court's ultimate opinion in this matter would remain unaltered.

deed of conveyance. Thus, the Court finds that, given the circumstances of this case, the plat attached to the deed and the original subdivision plat are incorporated into the 1959 Young-to-Edwards deed for the purposes of describing Lot 55 and determining the rights that were intended to be conveyed therewith. *See* 5C M.J., *Deeds*, §§ 25, 76; 23 Am. Jur. 2d, *Deeds*, §§ 61, 63; 26 C.J.S., *Deeds*, §§ 91.a, 100.h, 101.b.

Looking then at the original plat, the Court finds that the cul-de-sac on Lot 55 and the common roadway of which it is the terminus are contiguous and thus continuous in nature. Further, both are clearly rights of way. There can be, in the Court's view, no other discernible reason for delineating them on the plat in the manner and location in which they are depicted. The roadway is clearly marked as a right of way, and the cul-de-sac is a part of that roadway. Furthermore, cul-de-sacs, by their nature, are meant to be shared by those who live along a road that is closed at one end. Their intended purpose is to provide vehicular traffic the means to conveniently and easily turn around at road's end. Had the common grantors not intended to provide Lot 54 with a place to turn around on Lot 55, they indubitably would not have had the shared right of way between Lots 54 and 55 and the cul-de-sac delineated on the plat as they did. They just as easily could have shown the right of way terminating, without a turn-around area, at that point where it leaves Lot 54 and passes entirely onto Lot 55. The owners of Lot 55 then could have constructed a private driveway from that point for their own exclusive use. Here, though, the platted right of way continues onto Lot 55 and ends in a cul-de-sac. Thus, the Court finds that, in depicting the said cul-de-sac on Lot 55 as part of a right of way on the subdivision plat, the common grantors intended to reserve to themselves, as owners of Lot 54, an easement over that cul-de-sac for the benefit of Lot 54. Further, the Court finds that the Edwards, as grantees, acquired Lot 55 with notice that it was so encumbered.

The question remains, though, as to what rights, if any, Complainants themselves have acquired in the Lot 55 cul-de-sac. As before, the resolution of such an inquiry must begin with a determination of the common grantors' intent. Faced with a similar question in *Lindsay v. James*, 188 Va. 646, 51 S.E.2d 326 (1949), a case that, like the instant one, involved the obstruction of an alleged easement, the Supreme Court of Virginia established that when a subdivided tract of land is laid off into lots and streets on a plat and an owner purchases a lot described by reference to the plat, without reservations, that owner acquires a private right of easement appurtenant to his lot in all streets shown on the plat adjoining his lot and in

all streets that are "necessary to the enjoyment and value" of his lot. More recently, the same court held that purchasers of subdivision lots acquire the same private easements of passage over platted rights of way of they would acquire over platted streets. *Ryder v. Petrea*, 243 Va. 421, 416 S.E.2d 686 (1992). These and similar rules in other jurisdictions are based on the presumption that the common grantor, in depicting the streets and rights of way on the plat and in referring to the plat in the deed, intends to convey to the grantee a right of easement in such streets and rights of way. *See* 28 C.J.S., *Easements*, § 39.

Turning then to the facts before it and applying the above principles thereto, the Court concludes that the common grantors, the Youngs, in selling Lot 54 to the Bests, intended to and did convey a private easement over the platted right of way abutting Lots 54 and 55 and the corresponding cul-de-sac on Lot 55. As noted above, the Youngs had reserved such an easement in their April 25, 1959, deed with the Edwards. The title to Lot 54 was then acquired from the Youngs by the Bests pursuant to a deed dated June 15, 1959, deed with the Edwards. The title to Lot 54 was then acquired from the Youngs by the Bests pursuant to a deed dated June 15, 1959, that describes the lot conveyed by reference, without reservations, to a plat attached to the deed. That plat duplicates in pertinent part the recorded overall plat of the subdivision; both plats depict the subject cul-de-sac as a right of way. Furthermore, while evidence presented by Defendant indicates that the existing roadway and cul-de-sac were not constructed and used until 1993, the Court is of the opinion that the right of the Bests and of their successors in title to use the right of way shown on the original subdivision plat is reasonably beneficial to those owners and that the deprivation of that right would reduce the value and enjoyment of Lot 54, regardless of whether it was actually used or not. Clearly, a right of way does not have to be in use for it to increase the value of the property to which it is appurtenant or to benefit the owners thereof. The expectation or even the possibility of future use of a right of way, whose existence is well documented and known, can be extremely valuable and beneficial. Neither does such benefit or value need be abundant. For example, in *Lindsay, supra,* the successful lot owner testified that "the right to use [a] twenty-foot way for its entire distance was not only an added convenience, but that such rights would materially enhance the value of her property." In this Court's opinion the Bests' right to use the platted cul-de-sac on Lot 55 constituted no less a convenience for the owners of Lot 54 or enhancement of Lot 54's value. The right of way in question, after all, is not some

distant road in the subdivision in which the Bests had little interest. It is a nearby cul-de-sac on a roadway that abuts their property. It provides a convenient, and in some cases necessary, means of ingress and egress to Lot 54 in that it affords vehicles, particularly large trucks, an area in which to turn around. Therefore, the right to use that cul-de-sac is necessary to the enjoyment and value of Lot 54. Consequently, the Bests acquired that right when they purchased Lot 54.

The Bests, as noted above, then conveyed Lot 54 to the Towles, who sold it to the Andersons in 1976. In both instances, because the deeds conveyed Lot 54 by reference to the corrected plat and subject to easements and rights of way shown on the plat attached to the 1959 Youngs-to-Bests deeds, the private right of passage over the Lot 55 cul-de-sac passed with the land to the grantees. Accordingly, the Court finds that the Andersons acquired by deed of conveyance a private easement of way over the platted cul-de-sac situated on Lot 55. Hence, they have, as an interest appurtenant to Lot 54, the right to use that cul-de-sac for any and all reasonable purposes for which the cul-de-sac is intended, namely egress and ingress.

Having settled the major focus of this litigation, it still remains for the Court to determine the size of the easement held by Complainants. As noted above, the instrument by which the easement was created, the original subdivision plat, did not describe the size of the cul-de-sac right of way that was conveyed appurtenant to Lot 54. Therefore, the Court must refer to the intention of the parties to the grant to determine the width of the easement. *Waskey v. Lewis*, 224 Va. 206, 294 S.E.2d 879 (1982). Complainants want the Court to declare that they have an easement 60 feet in radius, which is the size designated on the corrected plat of subdivision. While the corrected plat has no bearing on the creation of the easement, it is persuasive evidence of the common grantors' intent with respect to its size. Furthermore, the dimensions of a right of way should be reasonably sufficient for the accomplishment of the easement's intended purpose. *Id.* Here, there can be no question that the purpose of the cul-de-sac is to allow vehicles to turn around where the road ends. In the Court's opinion, a cul-de-sac with a diameter of 120 feet would appropriately satisfy that purpose. The Court, therefore, finds that the radius of the easement over the cul-de-sac is 60 feet.

As a general rule, a person who has an easement over another's land must be allowed to enjoy that easement to its full advantage in the manner for which it was intended, and it is incumbent upon the owner of the

servient estate to refrain from interfering with such enjoyment of the easement. *See, e.g.*, 6B M.J., *Easements*, § 24. Here, the easement is a right of way intended for vehicular ingress and egress. Therefore, any activity of Defendant that unreasonably hinders, obstructs, disrupts, or interferes with the Andersons and their agents and guests' free passage along the cul-de-sac right of way is improper. Conversely, the owner of land burdened with a right of way may make any use of the land over which the way passes that does not materially impair or unreasonably interfere with the enjoyment of the easement. *Preshlock v. Brenner*, 234 Va. 407, 362 S.E.2d 696 (1987). Therefore, Mr. Edwards need not cease the operations of his composting business on Lot 55 except as those operations impair or interfere with the Andersons' enjoyment of the easement over the subject cul-de-sac. With that in mind, the Court finds that the flimsy, easily disassembled barrier that Mr. Edwards has in the past maintained on his property at the entrance to the cul-de-sac, for the purpose of preventing the theft of valuable equipment he keeps on the premises, is not an unreasonable impairment of the easement.

Therefore, for the reasons stated above, the injunction previously entered in this case is perpetuated insofar as it reflects the findings herein.