COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia

DERRICK E. BARR, ET AL.

MEMORANDUM OPINION* BY
v.        Record No. 1106-23-3          JUDGE MARY GRACE O'BRIEN
SEPTEMBER 17, 2024

GARTEN DEVELOPMENT, LLC

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

Alexander P. M. Boyd (John R. Walk; Hirschler Fleischer, PC, on
briefs), for appellants.

Elaine D. McCafferty (Woods Rogers Vandeventer Black PLC, on
brief), for appellee.

Derrick and Karen Barr appeal a circuit court order finding that Garten Development, LLC

("Garten") has a right of way over their property for ingress and egress, which Garten may use and

improve to transport timber and wood products. The court found that this right of way existed

pursuant to a 1914 deed ("1914 Deed").

The Barrs argue that two deeds from a 1979 transaction ("1979 Deeds") extinguished all

rights reserved in the 1914 Deed and conveyed a new right of way over a specific gravel road, with

no permission for improvement. They assert these arguments in four interrelated assignments of

error.

First, the Barrs argue the court erred by finding that the 1979 Deeds did not extinguish all

rights of way originally reserved by the 1914 Deed. Second, they argue the court erred in ruling that

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

the 1914 Deed authorized a "present right of way of unspecified width for ingress and egress and all other reasonable uses including the removal of timber and wood products."

Third, the Barrs argue the court should have found that the 1979 Deeds granted a new right of way for ingress and egress "fixed to the location and width of the road identified therein and existing at the time of the grant in 1979" and which "cannot be widened without [the Barrs'] consent." Fourth, they argue the court erred in ruling that, because the right of way had no "prescribed width," Garten was allowed not only to use it for ingress and egress but also to improve it for all reasonable purposes including logging.

BACKGROUND

The Barrs and Garten own adjacent property in Alleghany County. Garten accesses its property, the dominant estate, by a private gravel road ("Road") that crosses the Barrs' property, the servient estate. After acquiring the dominant estate in 2021, Garten sought to improve the Road to facilitate logging endeavors. The Barrs objected and filed a declaratory judgment action to establish that Garten's right of way was fixed to the location and width of the Road as reflected in a land survey they commissioned and to prevent Garten from "undertak[ing] any improvements to the Road to widen it or move it beyond [its] present boundaries."

At trial, the Barrs claimed that the 1979 Deeds released all rights of way reserved by the 1914 Deed and granted a new right of way, which was fixed to the location and width of the Road as it existed in 1979. Garten, however, argued that the 1914 rights of way were never released and could be improved to facilitate reasonable uses of its property, including logging. Garten also presented evidence that its proposed improvements were modest and would bring the Road into compliance with environmental regulations and guidelines. The court found in Garten's favor, and the Barrs now appeal.

A. 1914 Deed Reserves Rights of Way for Ingress and Egress

Prior to 1914, the Barr and Garten properties were part of a single tract owned by M.D. Miller, R.W. Crowder, and their wives (collectively, "Miller and Crowder"). In the 1914 Deed, Miller and Crowder conveyed a 99-acre tract (now owned by the Barrs and hereinafter referred to as the "Barr Parcel"[1]) to Louisa Frances Shue ("Shue"). The 1914 Deed conveyed to Shue only surface rights to the Barr Parcel, reserving "all the mineral of every kind and character under the surface" and "all necessary and proper rights of way for development purposes of the mineral property." Miller and Crowder also retained "a sufficient quantity of land," not to exceed 25 acres, "for a furnace site or for ore washing purposes and for any other purposes necessary or incident to the development of the mineral property."

The 1914 Deed also reserved to Miller and Crowder various "rights of way" across the Barr Parcel for purposes of transporting minerals and accessing their property:

> The rights of way, herein expressly reserved, shall include any necessary right of way for a broad gage railroad, and for narrow gage railroad tracks to and from any mines that may be opened on the property of [Miller and Crowder] and also include all necessary wagon roads, it being the object and intent of [Miller and Crowder] in conveying the aforesaid tract of land to Shue to convey the surface right only and to *reserve all necessary rights of way*, privileges and easements, together with a furnace site or ore washing site as may be necessary for the development of the mineral property in that section, and *more particularly for the proper ingress and egress of [Miller and Crowder] or their successors or assigns to the lands now owned by [Miller and Crowder]*, and known as the "Bratton Lands".

(Emphases added). Thus, the 1914 Deed did not specify locations for any of the rights of way but did reserve for Miller and Crowder (and all successors) a right of "proper ingress and egress" across

---

[1] The tract is now approximately 91.75 acres due to conveyances not relevant to this dispute.

the Barr Parcel to the Bratton Lands—i.e., Miller and Crowder's property, now owned by Garten ("Garten Parcel").

B. Subsequent Deeds Convey Garten Parcel and "All Rights Reserved" in the 1914 Deed

In 1947, John Cline acquired the Garten Parcel by a deed that expressly conveyed "all rights reserved" in the 1914 Deed. Therefore, Cline acquired not only the Garten Parcel but also all appurtenant rights—all privileges, easements, and rights of way—serving the Garten Parcel, including the mineral rights beneath the surface of the Barr Parcel.

The 1947 Deed specifically conveyed a "right of way shown on [the] plat hereto attached" and described the location of its centerline. No language limited the width or use of this right of way. The right of way's location corresponded to the location of a then-existing road, which is the Road in controversy.

In 1958, Cline conveyed the Garten Parcel to H.O. Bensel. The 1958 Deed specifically conveyed the right of way identified in the 1947 Deed and again described it by the location of its centerline. The 1958 Deed also conveyed to H.O. Bensel the rights originally reserved in the 1914 Deed.

Following H.O. Bensel's death, the Garten Parcel passed to Ursula Bensel, who subsequently conveyed it to Maria Bensel ("Bensel"). Bensel acquired "all the right, title, and interest" in the 1958 Deed. Thus, Bensel—Garten's predecessor—acquired all rights reserved in the 1914 Deed and the right of way first described in the 1947 Deed.

C. 1979 Deeds Release Certain Rights and Specify Right of Way Over "Established Road"

In 1979, a transaction occurred that forms the center of this dispute. At that time, Bensel still owned the Garten Parcel. R. Preston Lowman and Constance Lowman (the "Lowmans")

- 4 -

owned the Barr Parcel. The transaction consisted of two deeds dated March 28, 1979 and recorded

back-to-back.[2]

The First 1979 Deed is from the Lowmans (Barrs' predecessor) to Bensel (Garten's

predecessor). It conveys to Bensel certain water rights, including the right to lay a water line across

the Barr Parcel. Next, it provides Bensel a right of way over an "established road" as follows:

> [The Lowmans] further GRANT unto [Bensel] the *right of ingress and egress* to the "Bratton Lands" over the *established road*, but said right of ingress and egress shall not be exclusive, but shall be shared with such other parties as [the Lowmans] decree.

(Emphases added).

The Second 1979 Deed is from Bensel back to the Lowmans:

> [Bensel] does hereby GRANT, CONVEY and RELEASE unto [the Lowmans] *all restrictions, easements and mineral rights* in and over the hereinafter described property which she has acquired on that certain tract or parcel of land originally containing 91.75 acres [i.e., the Barr Parcel] . . . . A *portion* of the rights, easements and restrictions being herein released are set forth in that certain deed recorded in said Clerk's Office in Deed Book 44, at Page 128 [i.e., the 1914 Deed], reference to which said deed is hereby made for more particulars.

(Emphases added).

D. Subsequent Conveyances Refer to the 1914 Deed

After the 1979 transaction, Bensel conveyed the Garten Parcel to what was then known as

the Westvaco Corporation, which later conveyed it to Karl and Theresa Mey. The Meys sold the

property to Garten in 2021.

---

[2] "[W]here two papers are executed at the same time or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." *Bailey v. Town of Saltville*, 279 Va. 627, 633 (2010) (quoting *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.*, 109 Va. 513, 520 (1909)).

The Barrs ultimately acquired their property by deed in 1992 ("1992 Deed"). The 1992 Deed referenced both the 1914 Deed and the 1979 Deeds:

> This conveyance is *subject to the reservations of mineral rights, rights of way, and other rights which were reserved by [Miller and Crowder] in a certain deed to Louisa Frances Shue, dated March 1, 1914, of record in the aforesaid Clerk's office in Deed Book 44, at page 128 [i.e., the 1914 Deed],* but only to the extent the same are still valid and subject to the Deed dated March 28, 1979 from Marie L. Bensel, widow, to R. Preston Lowman and Constance H. Lowman, of record in the aforesaid Clerk's office in Deed Book 233, at page 702 [i.e., Second 1979 Deed], *which purports to release and convey certain of said rights and reservations*.

(Emphases added). The 1992 Deed thus reflects that only "certain" rights and reservations in the 1914 Deed were released in 1979, not all. However, in the present dispute, the Barrs argue that the 1979 Deeds extinguished the 1914 Deed in its entirety.

E. Garten Prevails at Trial

At trial, the parties presented a joint stipulation of facts reflecting the conveyances in the parties' chain of title. They disputed, however, Garten's access rights to the Road and the facts relating to the Road's historic location and width. To support their claim that the Road had not changed appreciably since its creation prior to 1979, the Barrs presented testimony from experts in land surveying and soil analysis. Additionally, Derrick Barr testified that his familiarity with the Road dated back to the 1960s and he always knew it to be a single-track gravel lane. He testified about Westvaco acquiring the Garten Parcel in 1984 and using the Road for logging in the mid to late 1980s, the late 1990s, and in 2004. At that point, the Barrs objected to Westvaco's use of—and desire to widen—the Road, and Westvaco built an alternative route to remove timber.

After the Barrs rested, Garten presented testimony from Steven Bennett, a representative of a logging company that had cut the western portion of the Garten Parcel. Bennet advised that his company had completed about 60% of the total project and had used a different road for timber transport so far. Bennet intended to use the Road for the remaining work and testified about the

- 6 -

improvements that would be necessary: clearing brush, adding stone, removing stray rocks, and "level[ing] up" certain areas to protect the undercarriage of tractor trailers. Bennett testified about the need to comply with the Virginia Department of Forestry's Best Management Practices for forest roads, violations of which can result in significant fines. To comply with BMPs, Bennet testified, certain portions of the Road may need to be rebuilt and certain pipes replaced.

After considering the evidence and post-trial briefs, the court issued a letter opinion and entered judgment in Garten's favor.

ANALYSIS

I. Standard of Review

A trial court's interpretation of a deed is reviewed de novo. *Ettinger v. Oyster Bay II Cmty. Prop. Owners' Ass'n*, 296 Va. 280, 284 (2018). "In construing a deed, [an appellate court] looks to the 'entire instrument' to ascertain the grantor's intent." *Id.* (quoting *Providence Props., Inc. v. United Va. Bank*, 219 Va. 735, 744 (1979)).

"If the language in a deed creating an easement is unambiguous, courts should interpret the deed solely based on the deed's language." *Marble Techs., Inc. v. Mallon*, 290 Va. 27, 33 (2015). If the language is ambiguous, a court may "'look to parol evidence' . . . to discern the parties' intent." *Id.* (quoting *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750, 754 (2001)). Whether a deed is ambiguous is a question of law that an appellate court reviews de novo. *See Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n*, 287 Va. 425, 429 (2014). Factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them. *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).

II. Assignments of Error 1 and 3:
Whether 1979 Deeds Extinguished 1914 Deed and Created New Right of Way over the Road

The Barrs assign error to the court's failure to find that the 1979 Deeds extinguished all rights reserved in the 1914 Deed and created a new right of way over the Road. They further

argue the court erred by not limiting the scope of Garten's right of way to the dimensions of the Road as it existed at the time of the purported 1979 grant.

In response, Garten maintains that the 1979 Deeds did not release all rights reserved in the 1914 Deed, only the mineral rights. Therefore, Garten argues, the 1914 Deed's grant of rights of way for ingress and egress is still operative and authorizes its claimed use, which includes not only ingress and egress but also improving the Road to facilitate logging endeavors.

On de novo review, we conclude that the 1979 Deeds did not extinguish all existing rights reserved by the 1914 Deed. Instead, the 1979 Deeds released only the mineral rights and confirmed that the rights of ingress and egress—initially reserved in the 1914 Deed—extended to the more recently constructed Road. This conclusion flows from comparing the 1914 language that reserved rights against the 1979 language that released rights.

The First 1979 Deed had two objectives. It granted water rights to Bensel, Garten's predecessor, including specifically the right to lay a water line across the Barr Parcel. It also granted Bensel (and all successors) the right of ingress and egress over an "established road" to the Garten Parcel.

The Second 1979 Deed reflects what Bensel gave up in exchange: Bensel released "all restrictions, easements and mineral rights" in the Barr Parcel. Although the Barrs argue that this language released all rights reserved in the 1914 Deed, we disagree because it failed to mention rights of way for ingress and egress—a specific category of rights reserved in the 1914 Deed.

Indeed, across two sentences, the 1914 Deed reserved four categories of rights. In the first sentence, Garten's predecessor reserved (1) "all the mineral of every kind and character under the surface," (2) "all necessary and proper rights of way for development purposes of the mineral property," and (3) "a sufficient quantity of land for a furnace site or for ore washing

- 8 -

purposes and for any other purposes necessary or incident to the development of the mineral property."

In the second sentence, the 1914 Deed reiterated that the "object and intent" of Garten's predecessor was to

> convey the surface right only and to reserve all necessary *rights of way*, privileges and easements, together with a furnace site or ore washing site as may be necessary for the development of the mineral property in that section, and more particularly *for the proper ingress and egress* of [Garten's predecessor] or their successors or assigns . . . .

(Emphases added). This language reflects a fourth category of reservations in the 1914 Deed: "rights of way . . . for the proper ingress and egress."

This fourth category is not encompassed by the phrase "easements and mineral rights" in the release set forth in the Second 1979 Deed. The Barrs argue that Virginia law uses the terms "easement" and "right of way" interchangeably and therefore the phrase "all restrictions, *easements* and mineral rights" necessarily included and released all "rights of way" initially conveyed in the 1914 Deed. We disagree. First, on the face of the 1914 Deed, the terms "easement" and "rights of way" are not used interchangeably. The 1914 Deed differentiated ingress and egress as "rights of way," distinct from other appurtenant uses referred to as "privileges and easements." The rights of way for ingress and egress are further distinguished from permanent surface uses, such as the furnace and ore washing site. Thus, because "rights of way" for ingress and egress carried a specific meaning in the 1914 Deed, they are not encompassed by the phrase "easements and mineral rights" in the Second 1979 Deed.

Second, to the extent there is any ambiguity in how these terms are used, we can look to other instruments in the chain of title and find that the right of ingress and egress was specifically called a "right of way." *See Allen v. Green*, 229 Va. 588, 592 (1985) (allowing extrinsic evidence when language in a deed "is of doubtful import, admits of being understood in more

- 9 -

than one way, admits of two or more meanings, or refers to two or more things at the same time"). Here, the 1947 and 1958 Deeds in the chain of title to the Garten Parcel specifically referred to the right of ingress and egress over the Road as a "right of way." If Bensel intended to release these rights in the 1979 Deeds, she would have used the phrase "right of way" or referred to the rights of way specified in the 1947 and 1958 Deeds.

In the context of abandonment of a right of way, the Supreme Court held that the intent to relinquish must be shown by "clear and unequivocal evidence." *Lindsey v. Clark*, 193 Va. 522, 525 (1952). Although here we are addressing an express release of property rights, a similar principle guides our analysis. Unlike the 1914 Deed that clearly reserves several "rights of way . . . for ingress and egress," the 1979 Deeds do not clearly relinquish these rights. The relinquishment of mineral rights (Second 1979 Deed), coupled with the confirmation of a right of way over Road (First 1979 Deed), do not constitute a clear release of the ingress/egress rights reserved in the 1914 Deed.

Moreover, when the Barrs finally acquired the property in 1992, the deed provided that the conveyance was subject to "rights which were reserved" in the 1914 Deed "to the extent the same are still valid and subject to [the Second 1979 Deed]," which purported to release "*certain* of said rights and reservations." (Emphasis added). This language reflects that 1979 Deeds did not extinguish all rights and reservations in the 1914 Deed, only a "certain" portion of those 1914 rights. The 1992 Deed demonstrates not only that the 1914 Deed was still to some degree viable, but also that the Barrs themselves were aware of its continued viability.

The Barrs argue that the First 1979 Deed must have extinguished the 1914 Deed in its entirety, or else the Second 1979 Deed would be redundant, granting a right of way that already existed by virtue of the 1914 Deed. We disagree. Because Bensel released some of the rights reserved in the 1914 Deed, the Second 1979 Deed was necessary to specify that the rights of way

for ingress and egress were not released and in fact extended to the Road, the physical location of which had not yet appeared in the Barrs' chain of title—only in the Garten chain of title. In short, the Second 1979 Deed was not redundant of the 1914 Deed but, rather, necessary to confirm and ratify the physical location of Garten's right of way over the Road.

Finally, to support their argument that the 1914 Deed was fully extinguished in the 1979 transaction, the Barrs point to the following language in the Second 1979 Deed: "A *portion* of the rights, easements and restrictions being herein released are [sic] set forth in [the 1914 Deed]." (Emphasis added). According to the Barrs, this language indicates that the 1979 release was broader than just the 1914 Deed and therefore necessarily released any and all easement rights for ingress and egress reserved in the 1914 Deed. However, this reference to the 1914 Deed says nothing about which of its rights and easements were being released, and therefore we find the Barrs' interpretation unpersuasive.

For these reasons, we conclude that the 1979 Deeds did not extinguish the rights of way for ingress and egress reserved in the 1914 Deed. Accordingly, the Barr Parcel remains subject to those rights of way for ingress and egress, including a right of way over the Road.

### III. Assignments of Error 2 and 4:
### Whether Garten's Right of Way Allows Improvement for Logging Purposes

The Barrs argue the court erred in ruling that, pursuant to the 1914 Deed, Garten has a right of way of unspecified width for ingress and egress and all other reasonable uses, including the removal of timber and wood products. They argue that because the 1979 Deeds constituted the grant of a new right of way, the scope of Garten's right is fixed to the location and width of the Road as it existed in 1979.

As discussed above, the 1979 Deeds did not extinguish all rights of way for ingress and egress reserved in the 1914 Deed, and they did not create a new right of way over the Road. Instead, the 1979 Deeds ratified that the rights of way under the 1914 Deed necessarily extended to

- 11 -

the newly existing Road. Therefore, not only are the rights of way in the 1914 Deed still viable, but they also authorize Garten's ingress and egress over the Road and dictate the scope of the right.

The 1914 Deed contains no limitation as to width but instead grants "all necessary rights of way . . . for the proper ingress and egress." Where no dimension is specified in a deed creating an easement, the easement's scope is determined by circumstances existing at the time of the grant. *See Waskey v. Lewis*, 224 Va. 206, 211 (1983).

> Where no width is expressed in the instrument creating a new right of way, the determination of width is made by reference to the intention of the parties to the grant, as determined by the circumstances existing at the time and affecting the property. . . . If the object of the right of way is expressed, then the dimensions of the way are such as to be "reasonably sufficient for the accomplishment of that object."

*Id.* (quoting *Hamlin v. Pandapas*, 197 Va. 659, 664 (1956)).

Additionally,

> where a right of way is granted or reserved[,] it may be used for any purpose to which the land accommodated thereby may reasonably be devoted unless the grant or reservation specifically limits the use, and the beneficiary of the right is not restricted to the type of vehicles or mode of travel existing at the time the easement was created, but he may use the way for any vehicle which his reasonable needs may require in the development of his estate.

*Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741, 744 (1958).

The circumstances at the time of the grant are clear from the 1914 Deed, which was a severance deed. It conveyed only the surface of the Barr Parcel, separating and retaining for Miller and Crowder (Garten's predecessor) all mineral rights beneath, along with easements and rights of way to exercise those rights. As discussed above, three categories of reservations in the 1914 Deed were specifically geared toward development of the mineral estate. Miller and Crowder reserved (1) "all the mineral of every kind and character under the surface," (2) "all necessary and proper rights of way for development purposes of the mineral property," and (3)

"a sufficient quantity of land for a furnace site or for ore washing purposes and for any other purposes necessary or incident to the development of the mineral property." The fourth category of reservation was for "rights of way . . . for the proper ingress and egress." This fourth category is a more generalized reservation not necessarily connected to the development of the mineral estate. Nevertheless, it reflects that mining and industrial endeavors were intended for the Garten Parcel.

Where, as here, "no dimensions [of a right of way] are expressed, but the object is expressed, the dimensions must be inferred to be such as are reasonably sufficient for the accomplishment of that object." *Hamlin*, 197 Va. at 664.

The 1914 Deed expressly referred to mineral excavation and contemplated heavy industrial uses of the Garten Parcel. Within this contemplation is an allowance for removing and transporting timber, even after mineral excavation had ceased. We do not construe the 1914 Deed as "specifically limit[ing] the use" of the ingress/egress rights of way for mineral excavation, but that initial objective provides proper context for determining the present scope of Garten's right of way. *Wagoner*, 199 Va. at 744. The dimensions of the right of way over the Road must be sufficient for Garten's proper ingress and egress, which includes the transportation of wood products. Thus, the court correctly concluded that the right of way could be improved to effectuate these uses.

Relying on a *Cushman Virginia Corporation v. Barnes*, 204 Va. 245 (1963), the Barrs argue that the Road cannot be improved as needed and that Garten's right of way is limited to the width of the Road as it existed in 1979.

*Cushman* involved a right of way that was created by an 1895 deed that referenced an existing road, specifying its location but not width. 204 Va. at 247, 252. The court heard evidence regarding the road's width at the time of the grant and found that the right of way was limited to that width. *Id.* at 252. The Supreme Court affirmed, stating that "[w]here the width of

- 13 -

a right of way is not specified in the grant, then it is limited to the width as it existed at the time of the grant." *Id.* (quoting *Good v. Petticrew*, 165 Va. 526, 533 (1936)). Applying this principle, the Supreme Court held that credible evidence supported the trial court's determination of width. *Id.* at 252-53.

*Cushman* is distinguishable because it addressed a right of way that was created by a deed which referenced an existing road. The 1914 Deed created the right of way at issue here; the 1979 Deeds simply confirmed that the right extended to the newly existing Road. The 1914 Deed did not reference any existing roads; therefore, it is not feasible to limit the width of the right of way to a road that existed at the time of the grant. Instead, the width is ascertained by the intent of the parties to the 1914 Deed. *See Waskey*, 224 Va. at 211.

Finally, we note that Garten seeks to make only modest improvements that would bring the Road into compliance with BMPs for forest roads. These improvements include clearing brush, adding gravel, rebuilding certain portions, and replacing pipes to be compliant with BMPs. The record reflects that these improvements would not burden the servient estate or the Barrs financially. Accordingly, the record reflects that Garten's use and improvement of the Road for its logging endeavors are "reasonably sufficient for the accomplishment of that object." *Id.* (quoting *Hamlin*, 197 Va. at 664).

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*